All right, we'll call the matter of Johnson v. Attorney General and Mr. Golden. Good morning. May it please the court, my name is Augustus Golden. I'm the appointed pro bono counsel for petitioner Pete Johnson. As an initial matter, your honors, I'd like to preserve two minutes of my time for rebuttal. Great. Thank you. The primary issue before the court today is whether a one-sided immigration hearing at which only one party is entitled to provide evidence and argument satisfies a due process requirement for a full and fair hearing. Are you conceding there was a hearing? You're talking about the very, the second appearance, I guess. We're talking about all the appearances combined. There was a hearing in August before an immigration judge, at which point the petitioner identified that he wished to proceed with arguments regarding asylum, withholding of removal and protection under convention against torture. A later October hearing at which he was represented by counsel who had not been provided any of the government's evidence. At both of those hearings, the immigration judge told petitioner and his counsel, respectively, to prepare their arguments and come back at a later hearing. That hearing was scheduled for originally for November 9th, 2016. It was then removed from the calendar without explanation and replaced with a December hearing at which no opportunity was provided for any party to provide any arguments. There was a request, I guess, made for the materials for the December hearing. My problem is the 589 form. And your colleague is arguing that the absence of a 589 form suggests that no request for asylum, withholding of a cat relief was made. I understand that's not your position. That's not our position, Your Honor. Okay. Is there any 589 form out there that you've seen? We're actually not entirely certain. I've spoken to my client about this. You don't even have to be positively certain. What does the record show with respect to the existence, even, of an I-589? The record is absent of any 589 form. We actually, when we appointed... You said the record's vacant? The record is... There's no 589 form in the record. And when we were appointed as pro bono counsel, we were given an opportunity by this court to request records from the government. We expressly request them to provide any 589 form that was filed and was absent from the record, or to state that none was filed at all. And the government simply stated that the record is what the record is and it will not be filed. Well, who knows better than your client, however, whether or not an I-589 was filed? Actually, the client's attorney at that time would have been the person responsible for filing the 589. She's unfortunately been uncooperative and uncommunicable. We've been unable to get information from her. And that was actually going to be my next question, but I asked you about your client, who presumably would have had to review and at least sign the 589. Unfortunately, he doesn't actually know. He's not a lawyer and he's not fully versed in which files were and weren't provided. Isn't it your obligation to produce that sort of evidence to your clients? Can you really turn to the government and say, oh, you don't have any evidence of something that my client was supposed to fill out and complete? Well, we're not saying that, Your Honor. What we are saying is that the client was never given an opportunity to provide that form. And the immigration courts, most immigration courts are not set up… As far as not having an opportunity, he had one hearing. And at that hearing, the IJ said this all comes down to whether it's a 589. If he was ready to go with a 589 that day, he certainly could have submitted one, right? There's no issue about that, is there? There's no issue about that. So he had an opportunity. He had, but he didn't have a full opportunity or reasonable opportunity. The immigration judge identified at that time that he wasn't prepared, he wasn't educated on what he could do. Excuse me. How does that impede your client's opportunity to file an I-589 at that juncture? Well, he could have. If the immigration judge had instructed him to prepare one in front of him and do it at that time, he could have done so. But what if he came prepared with a 589? Was there something that prevented him from coming prepared at that first hearing with a 589 form? Was there some rule in place or some order that the IJ issued that says when you have this first hearing, you cannot, under any circumstances, come with a 589? There's no rule that states that, Your Honor. Or order. There's no order either. No order that states that, Your Honor. No rule or order. So that seems like he could have. But there's also no rule or order that states that an immigrant in a proceeding can't simply state their reasons absent an I-589. Now, my client, if the immigration judge had asked him, could have stated his reasons. He still could have stated them even without being prompted. People have hearings all the time without being prompted. You get to say stuff without being prompted by our questions. Your client could have done the same thing in front of the IJ, right? He could have, but the immigration judge instructed him instead to prepare an I-589 form and wait for the next hearing to present his arguments. Was a form intended to him? Can you tell from the transcript? From the transcript, no. The immigration judge said he would send the form to Mr. Johnson by mail, but there's no record whether that form was actually delivered or not. Where was Johnson at that time? He was, I believe, between those hearings, I think at some point he was taken into detention. But let's be complete in your previous answer. Nothing in the record to support that the I-589 was actually received, nor is there anything in the record to show that the I-589 was actually transmitted by your client for filing, right? No, Your Honor. There's nothing in the record that shows either of those things. What the record does show is the immigration judge instructed my client to prepare his arguments and bring them to the next hearing. He didn't instruct my client to state his arguments at that time. He said we'll hear them in October. In October, he said we'll hear them in November. Let me try to pin this down. Judge Durling, the immigration judge, said that an I-589 would be sent? According to the transcript, that's what he said? There is something in the transcript that says he would send it to the client and he would send it in the mail. Okay, and at that point, what was your client? Was he in custody? I believe he was in custody. I'm not sure whether it was Commonwealth custody or Immigration Customs Enforcement custody. And when you asked for any records that the government might have pertaining to your clients and how that was worded, tell me again what the response that you got back from the government was. I'd have to double check the record. It is in the administrative record. The government filed a response months later that stated that they believe the record is what the record is and that they don't believe it would be appropriate to look beyond the record. They didn't say whether they had the document or they didn't have the document. They just said they wouldn't be providing any further information. Okay, I don't have any time for rebuttal now, but you can find, if it's in the appendix, if you can cite me to that appendix, that would be helpful. I would do so, Your Honor. But even regardless of whether your client had or didn't have an opportunity for the 589 at any of these hearings, your client has the obligation to take whatever issues he has with the IJ's determination and present those to the BIA to exhaust the administrative remedies that the BIA has. So the BIA as an appellate body can then review and look for an error in the IJ's matter, and in order to exhaust, you have to present sufficient facts and a basis in law for it. Did your client submit any facts on his form to the BIA? In the form to the BIA, the notice form was discussing, my client provided the basis of what he would put in a brief to the BIA. Which was what? I thought it just said due process violations under federal and Pennsylvania law. And that was the basis for it. There's no facts. In the notice, that's all that's required is to state the basis, which will then be supplemented by a brief later on. That notice was accepted by the BIA as proper, and a briefing schedule was set for him to provide a full brief that would provide all of his facts, all of his arguments. That's where the second due process violation in the courts below occurred, the second major structural error. When the BIA applied an additional filing requirement that wasn't published in its handbook in rejecting my client's request for an extension of a briefing schedule. We haven't discussed this, but that argument, at least to me, seems a lot weaker because the BIA practice manual states that the A number, as it's called, is required to be part of the material submitted. And I don't want to keep you from getting into that part of your argument. No, I'm happy to address this, Your Honor. The A number is stated to be required in certain filings before the BIA and not others. In fact, we went through in our reply brief and identified 18 different sections that specifically say an A number is required. The BIA has no rule that says- All right, but that really is not something that resolves the question that we're presented with here. Obviously, your client or counsel, more likely counsel, concluded that the A number was required here, correct? And set forth an incorrect A number. That might be the case. I'm not certain, but what I can tell you is the counsel at the time did include an A number just out of default because they decided to try and include one. But what do you mean out of default? I believe that they had a letterhead that had a space for it, and they tried to put one in there. It didn't mean that they were acknowledging that there was a requirement to do so. Now, the BIA was able to identify- Well, by having done so, that created an administrative problem for the BIA, did it not, or for the Bureau? We disagree because the BIA was able to correct the error. The BIA saw it was the wrong number, crossed it out, and wrote the right number. But there was a passage of time that's relevant here from the filing with the incorrect A number and then the resolution of that incorrect number, right? Exactly. And one thing the BIA did was they waited until after the deadline had passed before identifying the error. If they had identified it immediately, counsel for the petitioner would have been able at the time to file a corrective order. And what's the implication of that? The implication is that the petitioner was unable to participate in their appeal. They were denied the ability for a full and fair participation in that hearing because an additional requirement- So it sounds to me, though, when distilled to its essence, what you're saying is the denial of a motion for extension filed two days before the deadline is certainly a due process violation. So what you're asking us to do is say, when there's a denial of a motion for extension, that must be a due process violation. Is there any authority for the notion that a denial of a motion for extension is necessarily a constitutional procedural due process error? Yes, Your Honor. First, I'd like to address the fact that this isn't a motion for an extension. Motions are handled by a different section of the BIA. In other courts, a request for an extension is a motion, but the BIA specifically does not include a request for a briefing extension as a motion. They're handled by two different chapters of the BIA handbook. They're dealt with in two different ways. All right. I'm not clear even on how that would impact the question of whether or not this constitutes a due process violation. Because there's a rule in the handbook that states that all motions must have an A number. Requests are handled in a different chapter. So somehow the inclusion within a manual constitutionalizes the alleged violation? Well, an agency is required to follow the rules that it's published. When it doesn't, is that a constitutional violation? Exactly. The question is whether it creates a structural error in this situation. Of constitutional dimension? We believe so, Your Honor. Isn't this abuse of discretion review on this denial? Why don't you just say they abused the discretion? Why do you have to say it's a constitutional violation to reveal? Is it not abuse of discretion? Well, we believe it would be both in this situation. But we believe it relates to the other. But you haven't argued that it's both, have you? I mean, maybe I missed something or maybe I've forgotten something, which is highly likely. But have you raised the abuse of discretion issue in the first instance? And aren't you really required to do so for our purposes? Because we are certainly required to look at a question first on nonconstitutional grounds, constitutional avoidance purposes. Well, Your Honor, I've had to re-review the abuse. But what I would say is that by raising the issue, this could rise the level of a constitutional due process issue. The level of a procedural due process issue would be, of course, the court's discretion to decide it on a lesser ground. So regardless of whether it's a motion, I agree with you. It doesn't matter if it's a motion or not. Is a denial of an extension request ever, can it ever be a constitutional violation? And do you have any authority for that in the BIA context? We have the authority in our briefs that when an agency, this is the Virgin Islands case, when an agency sets up an appellate process, constitutional due process rights attach to that process. By creating the appellate process, they're creating a court system. By creating a court system, constitutional due process applies, including fairness in how that agency propagates and enforces its rules on filing requirements. So if the BIA had a font size requirement that says 10-point font or 12-point font, it has to be at least 12-point font, and your client happened to file in 10-point font, and that brief was rejected, you would tell us that that, because it's part of an appellate process, is now a due process violation? No, because that rule would have been clearly stated and published in the handbook. This was a rule that wasn't published. There was no requirement for an A number for a request for extension. I thought you were going to say no because in that situation, the person still has an opportunity to present their claim. Whereas in your situation, the failure to file a procedure, arguably, that was required, prevented him from filing his claim. That's very different from the font. You surprised me with your answer. We would agree with both of those reasons. The difference is between a published and an unpublished requirement, and also whether the party was given an opportunity to make its arguments anyway. Because this was a request for an extension as opposed to the actual brief itself, by denying the request for an extension, the petitioner was completely precluded from participating in that appeal. I'm sorry, I do have to modify that. We'll get back on rebuttal. Thank you very much, Your Honor. Mr. Pennington. Thank you, Chief Judge Smith, and good morning to all. Greg Pennington for the Attorney General. I'm going to skip over the looming jurisdictional point here based on the charges of removal and just go right to the beginning of the removal proceeding. Due process only requires an opportunity to be heard, and Mr. Johnson had multiple opportunities to be heard. Let's start with the first opportunity to be heard, the November 9 hearing. What happened, and was the 589 form ever sent? Sent by Mr. Johnson or sent by the immigration judge? Did he ever get one? There's nothing in the record to show that. The immigration judge at that first August 9 hearing said that he was going to mail him an application, and Mr. Johnson was still incarcerated in state custody, and I would say that the presumption of federal employees attaches here. Well, the only presumption, if you can show that it was properly mailed, then you get a presumption. If your response to a request for what I call discovery is, well, it is what it is, I mean, that to me is an amazing response to a request from a government for information about what's in a file. An attorney says what's in the file in the government, and the government's response is, hey, that's the file, that's what it is. I would say that I would have said that a little more artfully. I hope you wouldn't say that at all. I hope that you make a diligent undertaking to find what's in the file and send it to him. I'm really offended by the government's really kind of high-headed approach in these cases. Well, Judge McKee, I would say that if you look at what he was requesting, he was requesting refugee-related documents from his parents. Let's forget that. Let's just look at what Judge Durling said was going to be sent to him. You come into court today not even in a position to tell us whether or not that form was ever sent to him. I came into court today with an understanding. I contacted an associate general counsel from the executive office from Immigration Review before I came for two reasons. One, to see whether there was ever an I-589 stamped by the immigration clerk office. There was not. That doesn't mean one was sent. There was not, but we presume, and I'm not talking about regular mail presumption. I'm saying we presume that federal officials execute their duties faithfully. Even the caseload, the immigration judges have. How can you presume that a form gets sent just because a judge says we're going to get you this form and he's in custody? So how can you in the world can you reasonably presume that form ever got to him? Even if we presume that the judge didn't send it, it's still his burden to submit an application for relief from removal. And how does he get it? He can request it from his attorney because he appeared at that next hearing with an attorney. At the November 9 hearing? No, no. This is an October 12th hearing. So he appeared with counsel on October 12th. There was no mention from the attorney about an application for asylum. She said. But it was from the judge. Isn't that what the judge said? Well, the I-589 would take care of that. In responding to the attorney's request for a bond. First of all, he was not eligible for a bond because he was in state custody. He was still serving a state sentence. And he wouldn't be eligible for a bond even if he was in immigration custody because he's a criminal alien. But he was also responding to the attorney's request for a temporary protected status. So certain citizens or natives of Liberia can apply for protected status due to conditions in Liberia. That's not available to people with criminal convictions for aggravated felonies. So the cat relief, that's another argument. The cat relief might still be available. Correct. So that's what the judge was saying. He's trying to assuage this attorney saying, I understand you don't want your client removed. That's why we have that I-589 to fall back on. So you have this October 12th hearing. The judge says, look, I've already sustained the charges of removal. But I'm still going to give you a chance to file something to change my mind. And you have the I-589 to fall back on. So from October 12th to December 19th at that final hearing, over two months, nothing was filed. Nothing to challenge the charges of removal. Nothing to file for any relief or protection from removal. So let me just ask this question. At that first hearing, it sounds like, from my reading of the transcript, it sounds like the IJ said to the petitioner, it looks like you have, do you admit that you have these felonies? The petitioner said yes. After that, it looks like the petitioner is on his way to removal. At that point in time, the IJ says, do you want to apply for asylum? What would have happened if the IJ never asked that question? Is there a due process violation? Has the IJ, out of kind of looking out of maybe fairness, all options available to a pro se person, but what would have happened if the IJ never asked that question and just said, okay, I've heard enough. You haven't raised any other arguments. You haven't sought asylum. You haven't sought a 589. You haven't done anything else like this. We're done. You've got two felonies and you can be removed. I think I would have sought to remand the case on that factual basis. Okay. Because, I mean, an immigration judge has an obligation to, especially in the pro se alien context, to ask questions to see if they're going to be eligible for any relief from removal and to advise them of their right to apply for those forms of relief from removal. So, but then doesn't, if that obligation exists, then doesn't, once that conversation starts, doesn't that conversation have to end with the transferring or making available the 589? It seems really unfair to start a conversation and say, oh, you've got these rights. I'll get them to you. And then we don't know anything about how that conversation ends. And we don't because there's a lack of any statement about how it ends. From the first attorney who was there for two months who never filed an application, and I agree that this might be a completely different case if he continued pro se through the entire thing. If the judge says, I'm going to send you an application, and then all of a sudden there's just this oral decision saying you're ordered removed. I think that would be a different posture here. But here you have an attorney that enters an appearance and has the opportunity to apply for her client for protection from removal. And she had over two months to do it. And then when that removal proceeding is over, and we don't know exactly what happened on that last day, I'm guessing there was some kind of conversation off the record before the oral decision was entered. That's the November 9. That's the December. December 12, okay. So at the October 12 hearing, the immigration judge set a hearing for November 9. That was through the IHP program, the Institutionalized Hearing Program. So that's a separate docket in the immigration court for people serving state or federal sentences. So once he's transferred from state custody to immigration custody, that's why the hearing was moved. So there was no hearing on November 9. The immigration court sent out a hearing notice before that date saying the hearing had been rescheduled. So he appears at the December 21 hearing. Nothing's filed. The immigration judge orders his removal. And he reserved appeal. And I mentioned the DHS's opposition in the motion to reopen because it provides that only kind of window into what happened at that hearing. And it seems like his attorney says, we're going to just appeal this. We're just going to appeal the charges of removal. We're not going to apply for any relief either because she understood that he wasn't eligible based on his crimes except for deferral under the Convention Against Torture. Or she thought he didn't have a claim. It could have been a matter of strategy. We just don't know because we have no statements. That's an impressive strategy. It could be. And it seems from the opening argument that he seems to kind of lay blame at the feet of his attorney. And he surely did so in his pro se brief before the court appointed counsel. It seems that the elephant in the room is the lack of any ineffective assistance claim in this entire, in the course of all of this process. But it's not before us. It is not. And moving on to the appeal, that was his second opportunity in the removal proceeding to. Let me just touch on it. Let's just say, what if there was a due process violation? What if the IJ just fell short? You say there would be circumstances under which you would argue for remand. Let's say this was one of those circumstances. Would petitioner still have an obligation, though, to exhaust so that the BIA would have an opportunity to correct that error? He would because that's jurisdictional. I mean, I can't even make those arguments if the court doesn't have jurisdiction over these petitions, which we argue it doesn't. So isn't the first question that we have to look at not whether there was an underlying violation but whether your client, whether the petitioner presented a valid exhaustion base, exhausted his administrative remedies? I would say so. And I certainly argued it in the brief that he didn't articulate any factual or legal basis for his due process violation. In fact, doesn't that raise the question, what you've just asserted, as to whether or not this was a colorable claim under our circuit's case law? Certainly whether it was colorable or whether it was even properly presented to the BIA. That's a very different question. Answer the question to the Chief Petty Officer first. We would argue that it's not colorable based on this record. There's not a colorable due process violation either. The mere incantation of the term due process, I assume you would say, is not by itself enough. Right. To exhaust. You cannot dress a wolf in sheep's clothing. And so isn't that essentially what petitioner did here? We would argue yes. Were there any facts of any kind, any single factual averment included in that invocation of a due process violation? There was not. Conceding that we have a more forgiving exhaustion test in pro se cases, would that even be enough in such a forgiving regime to set out a colorable claim? I would say no on two levels. First, this isn't a pro se case. He's had a different attorney before the board. He had an attorney who could articulate a basis. But we do have we do have segments of time and segments during which he was not represented, don't we? The very first hearing. That's it. That's it. He had one attorney up until the immigration judge entered an oral decision. He immediately got a second attorney and timely appeal to the board. And I think that's why we get into this. Well, did the board commit some kind of error by denying a briefing extension request? I think that's why because of the jurisdictional problem looming. We have to keep saying due process, due process, due process, because that's the only hook over which this court can exercise jurisdiction. That's the only legal claim he can really make. There's just nothing colorable either about a claim that a rejection of a briefing extension request when there's still opportunity to submit a late brief. There's still opportunities for him to seek further relief from the board. It's not like the board is just shutting its doors and saying, no, you can't appeal. But you aren't saying are you saying that in order to exhaust petitioner would have had to have done each one of those other remedies? The the motion for an extension. Are you saying he didn't exhaust that issue? I was I would argue that the board should have a crack at that one first, because didn't they? Someone on behalf of the board denied the motion for extension. We can talk about what division it was and who knew. But but the whole point is to have the board as an appellate body review things to get a crack at correction. And they had that because this was their own order. So so unless you're saying that there was other things that had to be done, it seems that to exhaust, it seems they had plenty of opportunity to solve this problem. I would argue that he should have at least in order to exhaust, file the late brief and see if the board would have accepted it. Because on that denial of the extension request, it specifically states if you want to file a brief, you need to submit some explanation. And I would argue that maybe the explanation he did submit in the original briefing extension request was good cause. He said the attorney said his mother was in hospice care. To put it another way, you're suggesting we don't know what would have happened necessarily. Correct. He had filed a late brief. Correct. And I would say, as I said in my brief, that these kind of things aren't lost at the board. The board, as this court put in a footnote in Javier, it was a 2016 case. The board has to respond. They reopened in these kind of cases before where it summary affirmed because no brief was filed. But then when a motion to reconsider was filed, they say, hey, we need to take a look at these arguments. All that's discretionary. It says you may file a brief. Exhaustion is not about what may be available. You must do to give the agency a chance. Right. I would say that the board, given its procedural. Yes. You don't have to argue about anything. I'm a lawyer. That is what the profession has evolved to. But I would say even if we say he sufficiently exhausted that because that was the end game for him and he brings this claim to the court. It's still not colorable. It's it's a two day before the deadline. The board has provided sufficient if we're talking about the due process clause, a sufficient opportunity to present his case. It says in multiple places, you've got to file your brief on time. Extension requests don't cut it. And several courts of the field have the same rule. A briefing extension request doesn't automatically told the deadline for the brief. And I would. There'd be no there'd be no time limits. Right. And I cited this court rules. Even this court requires three days. And I would say that rejection of a filing requirement is universal to courts. If I filed something in this court with the wrong case, I tear the wrong heading, wrong name. The court's office would reject it and say, no, you got to correct this before I send it on to a panel. I would say that there are no colorable due process violations. I didn't get to the motion to reopen the second petition for review. But in terms of the call to process, if there was evidence on the change conditions in Liberia that the BIA did not consider that, we seem to need to rise to a due process argument. I would argue under this thing. That's what happened. I think that was a due process. I would argue that even if that did happen, I would argue under this court's precedent that it can't consider those claims under the criminal alien bar. This court has held that change circumstances to accept an untimely asylum application can't be reviewed under the jurisdictional bar. It's the stuff of a motion to reopen, though, isn't it? It is. So my time is up. If there are no further questions, we would ask the court to dismiss the petition. Thank you very much. Mr. Goldman, you have rebuttal. Thank you, Your Honors. Good morning again. First of all, to address your question, we did find letters between counsel and the government of which we requested documents and they said they would not buy them. This would be a joint appendix, pages 154 through 161. In 161, the government responds after nine months of delay, without any explanation, to state that they believe the administrative record is the administrative record and any items outside the record are not appropriate for inclusion. That's a seven-page span. 154 to 161? 161, yes, Your Honor. It took them seven pages to say that? No, the first two pages are our letters to the government. 161 is the government's response. It's a single page. I'd like to address a couple of things that counsel for the respondent just mentioned. First of all, regarding the hearing in front of the immigration judge where the counsel for the respondent alleged that nothing was filed in front of the immigration judge and that there may have been some discussion of the record at the December 21st hearing. We have no information on the appellate record to base this off. This is a problem that is indicative of what this letter that we've been discussing further causes in that the government is asking to make assumptions based on things that are outside the record while also denying us any access to information that is outside the record. When you say denying, though, presumably your client would also have access to it, right? No, there's no actual record provided to immigrants in these situations, especially of things that happen outside of a recorded hearing, Your Honor. Okay, but the key point is the Form 589, right? That's key. And if your client filled that out, he knows as well as the government if he did, right? I would imagine so, but again, this was several years ago and my client was represented by counsel. So he or his counsel would know as well and as fairly as the government, right? It's possible they did fill one out that was never filed. It's very common in immigration proceedings for filing to be delivered in person to the judge because most immigration courts are not set up for e-filing. And with the short deadlines they have, usually a mail filing has a fear of getting lost and many attorneys instead rely on the in-person filing. I can see my rebuttal time is up and I haven't had a chance to address any of your court's other questions. Is there anything further the court would like to hear today? No. Thank you very much, Mr. Holden. Thank you for your time. Thank you, Mr. Pennington. We'll take the matter under advisement.